IN THE DISTRICT COURT FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ADAM KEUP, ) | Case No. _____ |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| SARPY COUNTY, SARPY COUNTY ) | **COMPLAINT** |
| SHERIFF JEFF DAVIS, in his individual ) | |
| and official capacities, and DEPUTIES ) | |
| JANE OR JOHN DOES, 1–4, in their ) | |
| individual capacities as employees of ) | |
| SARPY COUNTY. ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |

Plaintiff Adam Keup for his Complaint against Sarpy County, Sarpy County Sheriff Jeff Davis, and Jane or John Does, 1-21, states and alleges as follows:

### INTRODUCTION

1. Plaintiff Adam Keup is a twenty-three-year-old resident of Council Bluffs, Iowa.

2. On the evening of May 29, 2020, Mr. Keup accompanied his partner Grady Brodigan to observe the protests against the killing of George Floyd occurring near 72nd and Dodge Streets in Omaha, Nebraska.

3. Upon arriving, Mr. Keup and Mr. Brodigan stopped to observe the scene just east of 72nd and Cass Streets, near a large police presence in a Walgreen's Pharmacy parking lot on the southeast corner of the intersection.

4. As Mr. Brodigan was photographing, Mr. Keup, standing idly, was approached by Sarpy County Sheriff's Deputies, who shot him with a pepper balls without warning, striking him in the right eye and shoulder.

5. As Mr. Keup immediately fell to the ground in immense pain, he was seized by the same officers and taken behind a police line where he was ordered to wait.

6. Mr. Keup was subjected to having his eye flushed by Sarpy County Sheriff's Deputies without his consent, which caused extreme pain and did not treat his eye injury.

7. Mr. Keup has permanently lost any effective vision in his right eye as a result of being shot with a pepper ball.

8. The Defendants' actions against Mr. Keup violated the U.S. and Nebraska Constitutions, and Mr. Keup has suffered serious and permanent injuries as a result. In the alternative, Mr. Keup alleges negligence and alternative liability on the part of the John and Jane Doe Officers and municipal corporations for their roles in causing or contributing to the injuries alleged.

## PARTIES

9. Plaintiff Adam Keup is a resident of Council Bluffs, Iowa.

10. Defendant Sarpy County is a municipality incorporated in the State of Nebraska which was and is responsible under law for the acts and omissions of its law enforcement officers, agents, and other employees, including those whose conduct is at issue in this lawsuit.

11. Defendant Jeff Davis was, at all times relevant to this action, the Sherriff of Sarpy County, Nebraska, and the chief policymaker for the Sarpy County Sheriff's Department. He is sued in his individual and official capacities.

12. Defendant Officers and Deputies Jane and John Does 1–4 ("Doe Defendants") are employees with or agents of Sarpy County who responded to protests on May 29 and May 30, 2020. The precise number and identity of these defendants is currently unknown to Plaintiff. At all times relevant herein, each of these Defendants were acting under color of state law and in the scope of their employment.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it involves a federal question under 42 U.S.C. § 1983.

14. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in this judicial district and it is where a substantial part of the events giving rise to the claims occurred.

## **FACTUAL ALLEGATIONS**

### A. **The May 29, 2020, Omaha Protest**

15. On May 25, 2020, George Floyd, a Black man, was killed by Minneapolis Police Office Derek Chauvin. During his arrest for a non-violent offense, Mr. Chauvin placed his knee and body weight on Mr. Floyd's neck as Mr. Floyd lay pinned to the ground.

16. Officer Chauvin kept his knee on Mr. Floyd's knee for nearly nine minutes, —while Mr. Floyd futility pled for mercy—until Mr. Floyd was comatose and mortally injured.

17. Mr. Floyd's death was captured on video and broadcast globally, sparking demonstrations in over 2,000 cities across the country and around the world.

18. On the evening of May 29, 2020, and into the early hours of May 30, 2020, Omaha citizens gathered at and near the intersection of 72nd and Dodge Streets (the "Protest") to protest the killing of Mr. Floyd and other instances of excessive force by police officers on people of color.

19. Defendants' response to the Protest included the use of "less-lethal" weapons, including, but not limited to, tear gas, pepper balls, other chemical irritants, and flash-bang grenades.

20. Defendants deployed this weaponry both by targeting specific individuals and by launching canisters into crowds, releasing the irritants indiscriminately in every direction.

21. Pepper balls can be lethal. Pepper balls are designed to be fired at high velocity from an air-propelled gun and explode on impact. On impact, the peppers balls release a concentrated chemical agent, designed to inflame and irritate human skin and airways, inflict severe pain, and inhibit breathing.

### B. **Adam Keup**

22. At all relevant times, Plaintiff Adam Keup was a twenty-three-year-old resident of Council Bluffs, Iowa.

23. On the evening of May 29, 2020, Mr. Keup accompanied his partner, Grady Brodigan, to the Protest.

24. Mr. Brodigan, an avid photographer, wished to photograph the Protest for its historical significance.

25. Mr. Keup offered to accompany Mr. Brodigan and assist with his photography equipment.

26. Neither Mr. Keup nor Mr. Brodigan intended to participate in the protests in any way; their sole desire was to observe and photograph.

27. After parking a few blocks east of the intersection of 72nd and Cass Streets, the pair walked west along Cass Street toward 72nd Street.

28. As they approached the 72nd Street intersection, they observed about a dozen law enforcement officers staging in the parking lot of the Walgreen's Pharmacy on the southeast corner of the intersection.

29. They stopped to observe from the sidewalk along the southern side of Cass Street, believing it would be safer to observe events near a large police presence.

30. Mr. Brodigan began taking photographs, looking beyond the police area, towards the protests occurring to the southwest of their position.

31. Mr. Keup continued standing idly on the sidewalk near Mr. Brodigan. Nothing about Mr. Keup's idle behavior could reasonably be perceived as posing a threat to the safety of law enforcement personnel or other individuals.

32. When Mr. Brodigan began taking photos, a cadre of four law enforcement personnel in riot gear began to approach Mr. Keup 's position from the west.

33. On information and belief, these personnel were deputies of the Sarpy County Sheriff's Office.

34. Without addressing Mr. Keup or Mr. Brodigan, one of the deputies raised his weapon and fired at Mr. Keup.

35. The first projectile, believed to be a pepper ball, struck Mr. Keup directly in the right eyeball and exploded.

36. Upon exploding, the projectile acted as intended and released a harsh chemical agent, designed to chemically burn and inflame human skin and airways on contact.

37. This chemical agent embedded in Mr. Keup's eye, causing excruciating pain and irreparable damage.

38. As Mr. Keup fell to the ground from the impact, he was immediately seized by the deputies.

39. The deputies dragged him past Mr. Brodigan and into the police staging area.

40. The deputies seated Mr. Keup on a curb of the parking lot and ordered him to remain there until a paramedic arrived.

41. Immediately after this, an unidentified officer, believed to be a Sarpy County Sheriff's Deputy approached Mr. Keup and apologized for shooting him in the eye.

42. After several minutes, an unidentified person believed to be an Omaha Fire Department paramedic arrived and instructed Mr. Keup to flush out his eye with water.

43. Without Mr. Keup's consent, an unidentified officer or deputy standing near him took a water bottle and poured water in Mr. Keup 's eye.

44. On information and belief, the unidentified officer or deputy was a Sarpy County Sheriff's Deputy.

45. Water flushing is not an approved medical procedure for treating pepper balls exploding into an eyeball.

46. The water flushing activated the chemical agent embedded in Mr. Keup's eye, causing additional extreme pain.

47. The water flushing in no way mitigated, flushed, or removed the chemical agent from Mr. Keup's eye.

48. After leaving the staging area, Mr. Keup was taken immediately by Mr. Brodigan to an emergency room where Mr. Keup endured several hours of having his swollen eye wrenched open and his eyeball physically scraped to remove as much of the embedded chemical as possible.

49. The procedure caused Mr. Keup excruciating pain and was necessary to treat Mr. Keup's injury.

50. Since then, Mr. Keup has never regained functional vision in his right eye.

51. He has a large permanent blind-spot in his right eye in the form of a black mass at the center of his vision. This mass obstructs virtually all of his vision in his right eye, except for some peripheral light perception.

52. The blind-spot is permanent, rendering Mr. Keup's right eye functionally blind and effectively useless.

53. Since being shot with the pepper ball, Mr. Keup's left eye has had to adapt to additional usage and strain.

54. Mr. Keup has now had to re-learn to do all daily tasks with no depth-perception and a substantially limited field of peripheral vision through his left eye only.

### C. Municipal Liability.

55. Sarpy County Sheriff Jeffrey Davis has a sufficiently senior role such that his decisions may fairly be said to represent official policy of Sarpy County.

56. Sheriff Davis and the Sarpy County Sheriff's Office instructed officers and deputies present at the Protest, including the Doe Defendants, to deploy the pepper ball weaponry at people gathered at or near the Protest regardless of any security risk those individuals posed.

57. Sheriff Davis and the Sarpy County Sheriff's Office equipped its personnel, including the Doe Defendants, with pepper ball weaponry and other "less-lethal" weaponry, without any training or instruction in the use of such weaponry.

58. Sheriff Davis and the Sarpy County Sheriff's Office did not train its personnel, including the Doe Defendants, present at the Protest in the use of such "less-lethal" equipment, including the pepper ball weaponry, prior to distributing it to officers to be used at the Protest and subsequent protests.

59. Sheriff Davis and the Sarpy County Sheriff's Office did not train its personnel, including the Doe Defendants, in crowd control tactics.

60. Sheriff Davis also acted with deliberate indifference in equipping Sarpy County Sheriff's Office personnel, including the Doe Defendant, with "less-lethal" weaponry without any training and instruction, and in instructing them to use such weaponry on individuals at or near the Protest without any training in crowd control tactics.

61. The unconstitutional consequences of equipping officers with potentially lethal "crowd control" weaponry they do not know how to use is obvious.

62. Sheriff Davis and the Sarpy County Sheriff's Office was aware of the obvious need to train or instruct its personnel in the use of pepper ball and other "less-lethal" weaponry for purposes of crowd control and crowd dispersal and chose not to do so.

63. Sheriff Davis acted with deliberate indifference to Mr. Keup's constitutional rights by authorizing, both explicitly and implicitly, the indiscriminate use of less-lethal force against anyone present or near the Protest who did not pose any safety threat; by failing to properly train officers on the use of "less-lethal" weaponry, including pepper ball weaponry, as a "crowd dispersal" technique; by failing to supervise and discipline Sheriff's Office deputies regarding appropriate use of force against protestors; and by failing to rectify the Sarpy County Sheriff's Office's unconstitutional custom of using "less-lethal" force to control and suppress demonstrations.

64. All of the foregoing Defendants, including the individual officers present, agreed with and assisted each other to approach Mr. Keup; to use pepper balls and other means of "less-lethal" force for the purpose of controlling or punishing individuals for being present or near the scene of protests; lent their support and the authority of their office to each other; failed to intervene to prevent the indiscriminate, excessive and unlawful use of pepper balls; and advised, assisted, ratified and/or directed the actions and inactions resulting in the severe injuries suffered by Mr. Keup.

## **FIRST CAUSE OF ACTION**

**Violation of the First Amendment / Retaliation – 42 U.S.C. § 1983**

65. Mr. Keup re-alleges and incorporates by reference all of the preceding paragraphs.

66. Defendants' decision to shoot Mr. Keup with a pepper ball violated the First Amendment in at least five ways: (i) as unconstitutional retaliation for expressive conduct protected under the First Amendment; (ii) as a violation of the right to peaceably assemble; (iii) as an unconstitutional restriction to a traditional public forum; (iv) as unconstitutional content-based and viewpoint-based discrimination; and (v) as a violation of Mr. Keup's right to record matters of public interest.

67. Defendants have adopted and/or ratified municipal policies, practices, and customs that have caused the violations complained of herein and, in the alternative, have actual or constructive notice of the constitutional violations described herein and have failed to take action, thereby allowing the continuation of such a policy or custom, and causing the harms complained of herein.

68. Mr. Keup's rights to assemble and observe peaceably are protected activities under the First Amendment of the United States Constitution.

69. Defendants, including the Doe Defendants, acted under the color of state law when they deprived Mr. Keup of his rights to assemble and observe peaceably by shooting him in the eye with a pepper ball, forcibly seizing him and removing him behind a police line, and administering unconsented-to flushing of his eye that exacerbated his injuries.

70. At the time Defendants, including the Doe Defendants, deprived Mr. Keup of these rights, Defendants believed Mr. Keup was engaged in conduct protected by the First Amendment and other portions of the United States Constitution.

71. Defendants' use of force against Mr. Keup was substantially motivated by the protesters' and Mr. Keup's engagement in First Amendment protected activity, constituted an effort to deter future similar activity, and evidences a pattern or practice of unconstitutional conduct that is certain to continue absent any relief.

72. Mr. Keup fears further retaliation in the future in violations of the First Amendment if he continues to observe, record, or otherwise participate in constitutionally-protected activity.

73. The above-described conduct was, and continues to be, a proximate cause of Mr. Keup's pain and suffering and has chilled his desire to attend future protests or participate in other constitutionally-protected activities.

## SECOND CAUSE OF ACTION

### Violation of the Fourth Amendment – 42 U.S.C. § 1983

74. Mr. Keup re-alleges and incorporates by reference all of the preceding paragraphs.

75. Mr. Keup did not commit a crime and was not suspected of committing a crime.

76. Mr. Keup did not pose a threat to Defendants, any of their officers or agents, or any other person.

77. Mr. Keup was seized by Defendants depriving him of his freedom of movement by shooting him in the eye with a pepper ball, forcibly removing him behind a police line, and flushing his injured eye without his consent.

78. Defendants acted under the color of state law when Defendants committed these acts and, as a result, Defendants' acts were objectively unreasonable and constituted unlawful seizure and excessive force.

79. Mr. Keup fears further retaliation in the future in violations of the Fourth Amendment if he continues to observe, record, or otherwise participate in constitutionally-protected activity.

80. As a direct and proximate result of Defendants' unlawful actions, Mr. Keup endured pain, suffering, and permanent severe injuries.

## THIRD CAUSE OF ACTION
### Violation of the Fourteenth Amendment – 42 U.S.C. § 1983

81. Mr. Keup re-alleges and incorporates by reference all of the preceding paragraphs.

82. Defendants acted under color of State law when they decided to forcibly disperse and/or punish Mr. Keup by using pepper balls, thereby violating his Fourteenth Amendment right to due process.

83. Mr. Keup has protected First Amendment liberty interests in the right to assemble, observe, and demonstrate peaceably.

84. Mr. Keup has a right to not be subject to excessive force in the context of engaging in this expressive First Amendment activity.

85. By violently attacking unarmed individuals engaged in expressive conduct, Defendants have engaged in conduct that was so egregious, so outrageous that it may fairly be said to shock the contemporary conscience, and therefore that conduct

constitutes excessive force in violation of the Due Process Clause of the Fourteenth Amendment.

86. As a direct and proximate result of Defendants' unlawful actions, Mr. Keup endured pain and suffering.

## **FIFTH CAUSE OF ACTION**
### **State Law Negligence**

87. Mr. Keup re-alleges and incorporates by reference all of the preceding paragraphs.

88. Defendant Sarpy County has adopted official policies governing the use of force.

89. Pursuant to these policies, officers are permitted to use "deadly force" only in certain limited circumstances, including to protect deputies or others from threats of death or serious bodily injury. All officers using "deadly force" are required to receive formal training on the specific weaponry used.

90. "Deadly force" is defined in Department policies as any use of force that creates a substantial risk of causing death or serious bodily injury.

91. The firing of pepper balls indiscriminately creates a substantial risk of causing death or serious bodily injury, and thus constitutes "deadly force" under relevant policies.

92. Additionally, manufacturers of pepper balls, flash bang grenades, and tear gas canisters specifically warn law enforcement agencies that such weaponry "may cause serious injury or death to you or others," and thus "must be used only by authorized and trained law enforcement."

93. On the evening of May 29, 2020, and into the early morning of May 30 2020, Doe Defendants—collectively and in concert with each other—began firing pepper balls indiscriminately at individuals and crowds that posed no threat of death or serious injury to the Doe Defendants.

94. The conduct of these Doe Defendants was inherently dangerous, and conducted in direct violation of Sarpy County Sherriff's Office policies. Accordingly, all officers are alternatively liable for the conduct of each other.

95.  As a direct and proximate cause of this negligent conduct, Mr. Keup sustained severe and permanent injuries to his right eye.

## PRAYER FOR RELIEF

WHERFORE, Plaintiffs respectfully requests an Order as follows:

1. Special damages for the cost of his medical care in an amount to be proven at trial;
2. Compensatory damages for the violations of his constitutional and statutory rights, all to be determined according to proof;
3. Punitive damages;
4. Attorneys' fees pursuant to 42 U.S.C. § 1988;
5. Costs of suit;
6. Pre- and post-judgment interest; and
7. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Dated this 16th day of August, 2021.

Adam Keup, PLAINTIFF.

BY:   */s/ Brian J. Fahey*
Brian J. Fahey, #25753
FRASER STRYKER PC LLO
500 Energy Plaza
409 South 17th Street
Omaha, NE 68102
(402) 341-6000
(402) 341-8290 (fax)
bfahey@fraserstryker.com
dgutman@fraserstryker.com
ATTORNEYS FOR PLAINTIFF