IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ADAM KEUP, | |
| Plaintiff, | 8:21-CV-312 |
| vs. | |
| SARPY COUNTY, JEFF DAVIS, Sarpy County Sheriff, in his individual and official capacities; and JANE OR JOHN DOE, Deputies, 1-4, in their individual capacities as employees of Sarpy County; | MEMORANDUM AND ORDER |
| Defendants. | |

## I.  INTRODUCTION

Adam Keup has sued Sarpy County, Sarpy County Sheriff Jeff Davis in his individual and official capacities, and four unnamed Sarpy County Sheriff's deputies in their individual capacities for injuries he suffered while observing an Omaha protest after the killing of George Floyd. In his Complaint, Keup brings claims under the First, Fourth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983, as well as a state-law negligence claim. Before the Court are two Partial Motions to Dismiss: one from Sarpy County and Sheriff Davis in his official capacity, Filing 7, and another from Sheriff Davis in his individual capacity, Filing 9. For the reasons stated herein, the Court grants in part and denies in part Defendants' motions.

1

## II. BACKGROUND

Following the death of George Floyd at the hands of Minneapolis Police Officer Derek Chauvin, Omaha residents gathered near the intersection of 72nd Street and Dodge Street to protest the killing and other instances of police misconduct. Filing 1 at 3. The protest began on the evening of May 29, 2020, and continued into the early morning hours of May 30, 2020. Filing 1 at 3. Adam Keup, a 23-year-old resident of Council Bluffs, Iowa, accompanied his partner, Grady Brodigan, to observe the protest in the evening of May 29, 2020. Filing 1 at 3. Brodigan wanted to photograph the protest for its historical significance, and Keup offered to help with the photography equipment. Filing 1 at 4. Neither Keup nor Brodigan intended to participate in the protest; instead, Keup claims that they only wanted to observe and photograph it. Filing 1 at 4.

Keup and Brodigan parked a few blocks east of the intersection of 72nd Street and Cass Street, and proceeded west along Cass Street toward 72nd Street. Filing 1 at 4. As they approached the 72nd Street intersection, they noticed about a dozen law enforcement officers in the Walgreen's Pharmacy parking lot at the southeast corner of the intersection. Filing 1 at 4. Because they felt safer near the large police presence, Keup and Brodigan stopped on the sidewalk on the southern side of Cass Street to watch the protest. Filing 1 at 4. Brodigan began taking photographs while Keup stood idly on the sidewalk near him. Filing 1 at 4.

According to Keup, as Brodigan began taking photographs, four law enforcement personnel in riot gear approached them from the west. Filing 1 at 4. In his Complaint, Keup states that he believes the four law enforcement personnel were deputies of the Sarpy County Sheriff's Office. Filing 1 at 4. Keup claims that one of the deputies raised his weapon and fired a pepper

2

ball[1] at him. Filing 1 at 4. The pepper ball struck Keup in the right eyeball and exploded, releasing a chemical agent. Filing 1 at 4.

Keup claims that once he fell to the ground the deputies seized him and dragged him to the Walgreen's Pharmacy parking lot. Filing 1 at 5. The deputies seated Keup on a curb and told him to remain there until a paramedic arrived. Filing 1 at 5. According to Keup, an unidentified officer whom he believed to be a Sarpy County Sheriff's deputy approached him and apologized for shooting him in the eye. Filing 1 at 5. Later, an Omaha Fire Department paramedic arrived and instructed Keup to flush his eye with water. Filing 1 at 5. Keup claims that an unidentified officer or deputy, whom he believes was a Sarpy County Sheriff's deputy, began pouring water from a water bottle into his eye without consent. Filing 1 at 5. Unfortunately, the water activated the chemical agent in Keup's eye and caused additional pain. Filing 1 at 5.

Brodigan picked up Keup from the parking lot and drove to an emergency room. Filing 1 at 5. Doctors then removed the chemical agent in Keup's eye. Filing 1 at 5. Since the incident, Keup claims that he has a permanent blind-spot in his right eye that renders it functionally blind. Filing 1 at 6.

On August 16, 2021, Keup filed suit against Sarpy County, Sarpy County Sheriff Jeff Davis, and four unnamed Sarpy County deputies. Filing 1. In his Complaint, Keup alleges that Defendants violated the First Amendment when Sarpy County deputies shot him with a pepper ball, moved him into the Walgreen's Pharmacy parking lot, and flushed his eye with water without his consent while he was observing and helping to photograph the protest. Filing 1 at 7–8. Keup further contends that Defendants' conduct constituted an unlawful seizure in violation of the Fourth Amendment. Filing 1 at 8–9. In his third cause of action, Keup claims that Defendants'

---

[1] A pepper ball releases a chemical agent to inflame human skin and airways on contact. Filing 1 at 4.

actions violated the Due Process Clause of the Fourteenth Amendment. Filing 1 at 9–10. Finally, Keup brings a state-law negligence claim, contending that Defendants fired pepper balls "indiscriminately," proximately causing his injuries. Filing 1 at 10.

On October 18, 2021, Sarpy County and Sheriff Davis in his official capacity filed a Partial Motion to Dismiss. Filing 7. Sheriff Davis also filed a Partial Motion to Dismiss the claims against him in his individual capacity. Filing 9. Both motions attack Keup's First Amendment claim for failing to allege that he was engaged in expressive conduct. Filing 8 at 4–5; Filing 10 at 7–8. Defendants also argue that Keup's Fourteenth Amendment claim is improper because claims for unlawful seizure and First Amendment retaliation must be evaluated under the First and Fourth Amendments. Filing 8 at 6–7; Filing 10 at 3–5. As to Keup's negligence claim, Defendants assert the defense of sovereign immunity. Filing 8 at 7–9; Filing 10 at 5–7. In his Brief in Opposition to Defendants' motions, Keup responds to these arguments and requests that the Court grant him leave to amend his complaint if the Court dismisses any of his claims. Filing 15 at 8.

### III. ANALYSIS

#### A. Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, but [is] not bound to accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' or legal conclusions couched as factual allegations." *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015) (citations omitted) (quoting *Iqbal*, 556 U.S. at 678). "When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Ashford v. Douglas Cnty.*, 880 F.3d 990, 992 (8th Cir. 2018) (quoting *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014)).

## B.  Keup's First Amendment Claim

Keup's Complaint alleges that Defendants' shooting him with a pepper ball violated the First Amendment. Keup claims that Defendants retaliated against him for his expressive conduct, infringed on his right to peaceably assemble, unconstitutionally restricted a traditional public forum, unlawfully engaged in content-based and viewpoint-based discrimination, and violated Keup's right to record matters of public interest. Filing 1 at 7. In response, Defendants emphasize that Keup admits he was "standing idly" when he was hit with a pepper ball and had no intent to participate in the protest. Filing 1 at 1, 4; Filing 8 at 4–5; Filing 10 at 7–8. Thus, Defendants assert Keup was not engaged in any conduct protected by the First Amendment and shooting him with a pepper ball did not violate his First Amendment rights.[2] Filing 8 at 4–5; Filing 10 at 7–8. The Court concludes that Keup engaged in conduct protected by the First Amendment when he was observing and helping to photograph the protest.

---

[2] Defendants do not move to dismiss Keup's complaint as deficient under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

"The First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). A First Amendment retaliation claim requires a plaintiff to "show that [he] engaged in protected activity, that the defendants' actions caused an injury to the plaintiff[] that would chill a person of ordinary firmness from continuing to engage in the activity, and that a causal connection exists between the retaliatory animus and the injury." *Bernini v. City of St. Paul*, 665 F.3d 997, 1007 (8th Cir. 2012). Defendants' motions target only the first element, which requires Keup to plead that he was engaged in a protected activity. According to Defendants, Keup's "conduct at the time of the incident was not an expressive activity as defined under the First Amendment" because he was "standing idly." Filing 18 at 3. Because "standing idly" is not "expressive conduct," Defendants reason that Keup cannot show that he was engaged in a protected activity covered by the First Amendment when he was hit with a pepper ball.

The Supreme Court has repeatedly emphasized the importance of the protections afforded by the First Amendment. In *Roth v. United States*, the Supreme Court declared, "The protection given speech and press was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Roth v. United States*, 354 U.S. 476, 484 (1957). Pursuant to these lofty aspirations, the Supreme Court has held that First Amendment protections reach "beyond verbal and written statements to expressive conduct that is 'sufficiently imbued with elements of communication.'" *Adam & Eve Jonesboro, LLC v. Perrin*, 933 F.3d 951, 957 (8th Cir. 2019) (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)). The Supreme Court has also acknowledged that United States citizens have a First Amendment right to "receive information and ideas," *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756–57 (1976), and that "[f]ree speech carries with it some freedom to listen." *Richmond*

6

*Newspapers, Inc. v. Virginia*, 448 U.S. 555, 757 (1980). Particularly relevant to this case, several circuits have found a free speech right to record the actions of police officers performing their official duties in public. *See Fields v. City of Phila.*, 862 F.3d 353, 359 (3d Cir. 2017) ("[R]ecording police activity in public falls squarely within the First Amendment right of access to information."); *Turner v. Lieutenant Driver*, 848 F.3d 678, 689 (5th Cir. 2017) ("[T]he First Amendment protects the act of making film, as there is no fixed First Amendment line between the act of creating speech and the speech itself." (internal quotation marks omitted)); *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012) (holding that there is a right to record police officers in public); *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) ("Gathering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting the free discussion of governmental affairs." (internal quotation marks omitted)); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (noting plaintiff's "First Amendment right to film matters of public interest"); *see also W. Watersheds Project v. Michael*, 869 F.3d 1189, 1195–97 (10th Cir. 2017) (finding a free-speech right in the collection of resource data).

Defendants are correct when they argue that Keup did not engage in any "expressive conduct." To constitute "expressive conduct," an individual must intend to "convey a particularized message," and the likelihood must be great "that the message would be understood by those who viewed [the conduct]." *Perrin*, 933 F.3d at 957 (8th Cir. 2019) (quoting *Johnson*, 491 U.S. at 404). Keup did not plead that he intended to convey any message. According to his

Complaint, his sole purpose was to observe the protest and assist his partner in photographing the event. However, as the Court outlined above, engaging in expressive conduct is not the only activity protected by the First Amendment. The question this Court must answer is whether the First Amendment applies to Keup watching the police interacting with the protestors and helping his partner take pictures of it. The Court concludes the First Amendment protects this conduct.

Unlike many other circuits, the Eighth Circuit has not expressly held that the First Amendment protects the photographing and recording of police activities in public. But it has provided the Court significant guidance on this issue in a recent decision, *Chestnut v. Wallace*, 947 F.3d 1085 (8th Cir. 2020). In *Chestnut*, the plaintiff brought an action against a police officer, alleging that the officer violated the Fourth Amendment when he stopped, frisked, and handcuffed him without reasonable suspicion or probable cause. *Id.* at 1087. According to the plaintiff, he had been watching another police officer perform traffic stops at a distance without interfering. *Id.* That police officer radioed the defendant police officer for assistance. *Id.* The defendant police officer approached the plaintiff, and, after the plaintiff refused to provide his full social security number, frisked him for weapons and handcuffed him. *Id.* After the district court denied the officer's qualified immunity defense, the officer appealed. *Id.* at 1088.

With one judge dissenting, the Eighth Circuit held that the defendant police officer "violated [the plaintiff's] clearly established right to watch police-citizen interactions at a distance and without interfering."[3] *Id.* at 1090. The majority cited with approval the other circuits that had

---

[3] The Eighth Circuit in *Chestnut* relied heavily upon the earlier case of *Walker v. City of Pine Bluff*, 414 F.3d 989 (8th Cir. 2005). *See Chestnut*, 947 F.3d at 1089–90. *Walker* involved an attorney, John Walker, observing an encounter between police and some young men. *Walker*, 414 F.3d at 992. Police officers approached Walker and, after he identified himself and offered them his driver's license, handcuffed him. *Id.* at 992. The court in *Walker* denied the arresting officer qualified immunity, holding, "No reasonable police officer could believe that he had arguable probable cause to arrest such an on-looker in this situation." *Id.* at 993. According to the *Chestnut* court, *Walker* established the right "to watch police-citizen interactions at a distance and without interfering." *Chestnut*, 947 F.3d at 1090.

"held that a person has the right to record police activity in public." *Id.* (citing *Fields*, 862 F.3d at 355–56). Thus, the *Chestnut* court wrote, "If the constitution protects one who records police activity, then surely it protects one who merely observes it—a necessary prerequisite to recording." *Id.* The majority noted that the Eighth Circuit "in particular has been quite forthright in upholding the right of citizens to engage with officers while they perform their duties." *Id.* at 1090–91. And, the *Chestnut* court observed, the majority's holding protected "the people's ability to monitor police activities to ensure that their duties are carried out responsibly." *Id.* at 1092.

Although *Chestnut* was a Fourth Amendment case, its pronouncement of a constitutionally protected right to observe and record police activity leads the Court to find Keup was engaged in a protected activity when he was hit with a pepper ball. A strong consensus has developed amongst the circuits that this conduct fits within the First Amendment's protections. Indeed, no circuit to consider the issue has held that the right to record police activity does not exist under the First Amendment. *See Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 831–32 (1st Cir. 2020) ("[W]hile some courts of appeals have held that this right to record is not clearly established in some contexts for purposes of qualified immunity, none has held that the right does not exist." (citation omitted)). In general, these federal courts of appeal consider watching or recording important events to constitute either "the protected creation of speech," *Michael*, 869 F.3d at 1195–96, or "a type of newsgathering" deserving of First Amendment protection, *Rollins*, 982 F.3d at 832. In other words, the circuits maintain that if the government were to prohibit a precursor to speaking, it could remove the right to free speech entirely. *See Alvarez*, 679 F.3d at 595 ("The right to publish or broadcast an audio or audiovisual recording would be insecure, or largely ineffective, if the antecedent act of making the recording is wholly unprotected . . . ."). This reasoning has persuasive appeal.

9

The weight of authority from the other federal circuits and the statements in *Chestnut* proclaiming a constitutional right to record and observe police activity in public lead this Court to conclude that the ability to watch and assist in taking photographs of a protest is activity protected by the First Amendment. When Keup was observing the protest and assisting his partner in photographing the event, he was engaged in activity protected by the First Amendment.[4] Therefore, Keup's First Amendment claim survives Defendants' Motions to Dismiss.

### C. Keup's Fourteenth Amendment Claim

In his third cause of action, Keup alleges that Defendants violated his Fourteenth Amendment right to due process by shooting him with a pepper ball while he was observing and helping to photograph the protest. Filing 1 at 9–10. Keup claims that he has a protected First Amendment liberty interest to observe and help photograph the protest, and that he has a right to be free from excessive force while engaging in a protected First Amendment activity. Filing 1 at 9–10. Defendants have moved to dismiss this claim by arguing that Keup's Fourteenth Amendment claim must be evaluated under the First and Fourth Amendments. Filing 8 at 6–7; Filing 10 at 3–5. The Court agrees with Defendants and dismisses Keup's Fourteenth Amendment claim.

To the extent Keup is bringing an excessive-force claim under the Fourteenth Amendment, Defendants are correct that an excessive-force claim must be brought under the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth

---

[4] Defendants have not moved to dismiss on the grounds that Keup has not adequately plead a "causal connection between the retaliatory animus and the injury." *Bernini*, 665 F.3d at 1007. The Court therefore will not consider whether Keup has failed to state a claim on that ground.

10

Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." (emphasis omitted)). However, Keup argues that his Fourteenth Amendment claim "is premised on a theory of substantive due process, in particular, a deprivation of [Keup's] First Amendment Rights." Filing 15 at 8. The Court thus turns to whether Keup may assert a First Amendment claim and a Fourteenth Amendment claim when both are predicated on a violation of his free-speech rights.

In arguing that Keup cannot assert both a First and Fourteenth Amendment claim for the alleged violation of his free-speech rights, Defendants point to a recent order in this district: *Poole v. City of Lincoln*, No. 4:21CV3030, 2021 WL 2935899 (D. Neb. July 13, 2021). In *Poole*, a magistrate judge for the District of Nebraska found that the plaintiff could not assert a Fourteenth Amendment substantive due process claim that "arose out of her claims for violation of her First Amendment rights . . . ." *Id.* at *5. The magistrate judge observed that the Supreme Court in *Albright v. Oliver*, 510 U.S. 266 (1994), explained that when an amendment to the United States Constitution "'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.* at 273 (quoting *Graham*, 490 U.S. at 395). The magistrate judge found that the First Amendment properly covered the plaintiff's claims that her free-speech rights were violated. *Poole*, 2021 WL 2935899, at *5.

The Court likewise finds that Keup's First Amendment allegations, rather than generalized notions of substantive due process, are the proper guide for analyzing the claims Keup makes in his Complaint. *See Koutnik v. Brown*, 456 F.3d 777, 781 n.2 (7th Cir. 2006) (stating that the district court properly analyzed a challenge to an allegedly vague and overbroad rule under the First rather

than the Fourteenth Amendment). Thus, the Court grants Defendants' Motions to Dismiss as to Keup's Fourteenth Amendment substantive-due-process claim.

### D. Keup's State-Law Negligence Claim

Defendants have also moved to dismiss Keup's negligence claim. In his Complaint, Keup alleges that Defendants were negligent when they fired pepper balls indiscriminately at individuals who posed no threat of death or serious injury to them. Filing 1 at 10. According to Keup, Defendants firing the pepper balls indiscriminately proximately caused the injuries to his right eye. Filing 1 at 10–11. Sarpy County and Sheriff Jeff Davis in his official capacity argue that they are entitled to sovereign immunity under the intentional-tort exception to Nebraska's waiver of sovereign immunity for political subdivisions.[5] Filing 8 at 7–8; Neb. Rev. Stat. § 13-910(7). The Court agrees with Sarpy County and Sheriff Davis in his official capacity and dismisses Keup's negligence claim as to them.

Nebraska's Political Subdivisions Tort Claim Act ("PSTCA") governs tort actions against political subdivisions in Nebraska such as Sarpy County. *See Jessen v. Malhotra*, 665 N.W.2d 586, 590 (Neb. 2003) ("The [PSTCA] is the exclusive means by which a tort claim may be maintained against a political subdivision or its employees."). The PSTCA waives sovereign immunity "subject to statutory exceptions." *Kimminau v. City of Hastings*, 864 N.W.2d 399, 407 (Neb. 2015). As is relevant here, Nebraska's political subdivisions retain sovereign immunity against "[a]ny claim arising out of assault [and] battery." Neb. Rev. Stat. § 13-910(7).

---

[5] Sheriff Jeff Davis in his individual capacity also brings forth this sovereign immunity defense. Filing 10 at 6–7. However, Sheriff Davis has no sovereign immunity when sued in his individual capacity. *See Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017) ("[S]overeign immunity 'does not erect a barrier against suits to impose individual and personal liability.'" (quoting *Hafer v. Melo*, 502 U.S. 21, 30–31, (1991)). Because Sheriff Davis has only moved to dismiss on sovereign-immunity grounds, the negligence claim against him in his individual capacity survives his motion.

At first glance, Defendants' argument that the intentional-tort exception applies to Keup's negligence claim appears misguided. However, Defendants point out that the Nebraska Supreme Court in *Moser v. State* held that "if a claim would not exist without an assault or battery, it arises out of that battery" and cannot avoid the intentional-tort exception by being pled as a negligence claim.[6] *Moser v. State*, 948 N.W.2d 194, 202 (Neb. 2020); *see also Edwards v. Douglas Cnty.*, 953 N.W.2d 744, 756 (Neb. 2021) ("[T]he exemption applies whenever an assault is essential to the claim, and it bars claims against the government which sound in negligence but stem from [an assault or] battery." (second alteration in original) (internal quotation marks and footnotes omitted)). In *Edwards v. Douglas County*, the Nebraska Supreme Court further explained, "[W]hen a tort claim against the government seeks to recover damages for personal injury or death stemming from an assault, the claim necessarily 'arises out of assault' and is barred by the intentional tort exemption under the PSTCA." *Edwards*, 953 N.W.2d at 756.

Here, Keup's negligence claim necessarily arises out of a battery. Keup alleges in his Complaint that one of the Sarpy County deputies raised his weapon and fired a pepper ball at Keup. Filing 1 at 4. The pepper ball struck Keup in the eye and exploded, causing his injuries. Filing 1 at 4. Thus, the existence of Keup's negligence claim arises out of the alleged battery committed against him by a Sarpy County deputy. *See Britton v. City of Crawford*, 803 N.W.2d 508, 515 (Neb. 2011) ("[T]he intentional tort of battery is defined as an actual infliction of an unconsented injury upon or unconsented contact with another [or] . . . . as any intentional, unlawful physical violence or contact inflicted on a human being without his consent." (internal quotation marks and

---

[6] Although the *Moser* Court was analyzing sovereign immunity under the Nebraska State Tort Claims Act, its holding also applies to the PSTCA. *See Kimminau v. City of Hastings*, 864 N.W.2d 399, 408 (Neb. 2015) ("[W]here language in the PSTCA is similar to language in the State Tort Claims Act, cases construing one statute are applicable to construction of the other."). *Compare* Neb. Rev. Stat. § 81-8,219(4) (intentional-tort exception language in the State Tort Claims Act), *with* Neb. Rev. Stat. § 13-910(7) (intentional-tort exception language in PSTCA that mirrors the language in the State Tort Claims Act).

13

footnotes omitted)); *see also* Poole, 2021 WL 2935899, at *15 (finding that the plaintiff's claim that her injury arose when officers fired rubber bullets "indiscriminately into crowds" arose from an assault or battery). Thus, sovereign immunity bars Keup's claim of negligence against Sarpy County and Sheriff Davis in his official capacity.

### E. Keup's Prayer to Re-Plead

In his brief in opposition to Defendants' motions, Keup requests that the Court grant him leave to amend his Complaint in the event any of his claims are dismissed. Filing 15 at 8. Given that some of Keup's claims have survived Defendants' motions, the Court will deny this request at this time. If Keup wishes to amend, he may move to amend his pleading and file a proposed amended pleading pursuant to Nebraska Civil Rule 15.1.

### IV. CONCLUSION

Keup has alleged that he engaged in activity protected by the First Amendment and thus his First Amendment claim survives. As to his Fourteenth Amendment claim, the Court grants Defendants' Motions to Dismiss because his Fourteenth Amendment claim must be evaluated under the First and Fourth Amendments. Finally, Sarpy County and Sheriff Davis in his official capacity are entitled to sovereign immunity against Keup's negligence claim. Accordingly,

IT IS ORDERED:

1. The Partial Motion to Dismiss on behalf of Sarpy County and Sheriff Davis in his official capacity, Filing 7, is granted in part and denied in part; and

2. The Partial Motion to Dismiss on behalf of Sheriff Davis in his individual capacity, Filing 9, is granted in part and denied in part.

Dated this 21st day of January, 2022.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge